UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

ADAM WIERCINSKI,                                          MEMORANDUM AND ORDER

              Plaintiff,                          09 Civ. 4413 (ILG) (JO)

      - against -

MANGIA 57, INC.,

              Defendant.
------------------------------------------------------x

GLASSER, Senior United States District Judge:

On October 14, 2009, plaintiff Adam Wiercinsiki ("plaintiff") filed a complaint against his former employer, Mangia 57, Inc. ("Mangia"), a café and catering company, and several Mangia employees, alleging, among other things, claims for discrimination and hostile work environment based on religion pursuant to Title VII of the Civil Rights Act of 1964, hostile work environment based on race pursuant to 42 U.S.C. § 1981, and violations of various state and municipal laws.  The Court on July 2, 2010 dismissed plaintiff's state and municipal claims, and on November 29, 2011, so ordered the parties' stipulation dismissing with prejudice all of the remaining claims except plaintiff's Title VII and Section 1981 hostile work environment claims against Mangia.  Mangia now moves for summary judgment pursuant to Fed. R. Civ. P. 56(a) on the remaining claims.  For the foregoing reasons, Mangia's motion for summary judgment is hereby GRANTED as to plaintiff's Title VII claim and DENIED as to plaintiff's Section 1981 claim.

## I.  BACKGROUND

The background to this action is also set out in the Court's previous decision, familiarity with which is assumed.  See Wiercinski v. Mangia 57, Inc., No. 09 Civ. 4413 (ILG), 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010).  The pertinent facts, either

undisputed or, where disputed, taken most favorably to plaintiff are as follows. Mangia employed plaintiff as a caterer from 1999 to 2007. Defendant's Rule 56.1 Statement of Undisputed Material Facts dated Jan. 20, 2012 ¶¶ 8, 12 ("Def.'s 56.1") (Dkt. No. 83-6). Plaintiff is Jewish. Complaint dated Oct. 14, 2009 ¶ 27 ("Compl.") (Dkt. No. 1). Artur Zbozien ("Zbozien"), a dispatcher at Mangia, was plaintiff's supervisor. Def.'s 56.1 ¶ 25. So too was Margaret Cymanow ("Cymanow"), Mangia's general manager. Def.'s 56.1 ¶ 27. Robert Bazgier ("Bazgier") and Gregorz Sarosiek ("Sarosiek"), dispatching assistants at Mangia, were two of plaintiff's coworkers. Plaintiff's Rule 56.1 Counter-Statement of Undisputed Material Facts dated Mar. 2, 2012 ¶ 31 ("Pl.'s 56.1") (Dkt. No. 85).

In deposition testimony, plaintiff described repeated harassment he received at the hands of Zbozien, incidents involving Bazgier and Sarosiek, and derogatory comments made by Cymanow. Some of this testimony was corroborated by other employees at Mangia. On his first day of work, plaintiff testified that after accidentally bumping into Zbozien while the two were moving boxes, Zbozien said to him "Did anybody ever fuck you, mother-fucking Jew." Declaration of Steven Warshawsky dated Mar. 2, 2012 ("Warshawsky Decl.") Ex. 2 (Wiercinski Dep.), at 268 (Dkt. No. 86). Zbozien frequently referred to plaintiff, among other things, as "stupid Jew," "dirty Jew," "fucking Jew," told him to go away because it "smells of Jew," and at least a few times would say, "Fuck off, you stupid Jew." Warshawsky Decl. Ex. 3 (Krajewski Dep.), at 37-39; id. Ex. 5 (Ubowski Dep.), at 48, 67; Warshawsky Decl. Ex. 2 (Wiercinski Dep.), at 271.

Zbozien also "practically on a weekly basis" refused to distribute to plaintiff his share of the tips at the end of each shift, forcing one of his colleagues to give plaintiff his share and then taking over once again after plaintiff left. Id. Ex. 2 (Wiercinski Dep.), at

272 ("[W]hen I came to the register when it was my turn he . . . stood up and he said, I'm not going to be dealing with this stupid Jew or other dumb Jew, and he asked his assistant Bazgier to deal with me instead."); id. Ex. 3 (Krajewski Dep.), at 31 ("When Artur saw [plaintiff] waiting, he was saying that he wouldn't be giving any money to the dirty Jew.  And usually when he was getting up, Robert was taking his place.  When [plaintiff] was done, Artur returned.").  On approximately 10 of the occasions in which he did interact with plaintiff, Zbozien paid plaintiff part of his tip in pennies by tossing the pennies at plaintiff, the surrounding tables, and the floor.  Id. Ex. 3 (Krajewski Dep.), at 36 ("[S]o [Zbozien] on purpose was picking up, you know, the pennies only and grabbing the handful of pennies.  He was tossing them in front of [plaintiff].  Obviously those pennies were flying everywhere—on the tables, on the floor, sometimes into his body."); id. Ex. 2 (Wiercinski Dep.), at 275 ("[H]e just threw it all over the room at me.").

On two other occasions, Zbozien made reference to Zyklon B, the poison gas used in Nazi death camps, during interactions with plaintiff—passing gas in plaintiff's direction and saying, "[Y]ou see Jew, this is your Zyclon [sic] B" and sprinkling salt on plaintiff's food and, while laughing, stating "This is your Zyclon [sic] B."  Id. Ex. 2 (Wiercinski Dep.), at 278-79.

With respect to the treatment he received from Bazgier and Sarosiek, plaintiff testified that after he complained to Cymanow about Bazgier calling him names such as "piece of shit Jew," Bazgier kicked plaintiff in the groin and called him a "fucking pederast Jewish faggot."  Id. Ex. 2 (Wiercinski Dep.), at 288-90.  On another occasion, after plaintiff discovered Sarosiek drinking in Mangia's supply room, Sarosiek pushed plaintiff, causing him to hit his head on a wall and said "get the fuck out of here you

3

fucking Jew." Id. Ex. 2 (Wiercinski Dep.) at 285.  As for harassing comments made by
Cymanow, plaintiff testified that, "many times," Cymanow called him "jopek" or
"jopki"—apparently a derogatory term for Jews—and that "many times over" she
mentioned to plaintiff that she blamed the Jews for killing Christ.  Id. Ex. 2 (Wiercinski
Dep.), at 252-54.

      Plaintiff did not report every instance of harassment he experienced at Mangia
but on several occasions complained to Cymanow about the treatment he received.
Sometimes she took action in response to the complaints; sometimes she did not.
Plaintiff testified that he complained about Zbozien's refusal to interact with him during
the tip distribution process "[o]n numerous occasions" only to be met with the response
that she was too busy to deal with the complaints.  Warshawsky Decl. Ex. 2 (Wiercinski
Dep.), at 273.  He also testified that Cymanow took no action when he complained to her
after Zbozien sprinkled salt on his food and made the Zyklon B comment and after
Bazgier kicked plaintiff in the groin and called him "a fucking pederast Jewish faggot."
Id. Ex. 2 (Wiercinski Dep.), at 279, 289-90.  Cymanow did take remedial action after one
of the occasions plaintiff complained to her about Zbozien's treatment of him—
temporarily transferring Zbozien for several weeks to a different Mangia location.  Id.
Ex. 2 (Wiercinski Dep.), at 281-82.  After Zbozien returned, however, plaintiff testified
that "it was hell all over again."  Id. Ex. 2 (Wiercinski Dep.), at 282.

      In December 2007, plaintiff requested a leave of absence from Mangia in order to
travel to Poland and, prior to leaving, was informed that he would not be rehired upon
his return because he was leaving during the busiest time of the year.  Def.'s 56.1 ¶¶ 36-
37.  After returning from his trip, plaintiff was not rehired by Mangia.  Def.'s 56.1 ¶ 38.

On or about July 27, 2007, plaintiff filed a verified complaint against Mangia LLC with the New York State Division of Human Rights ("NYSDHR"), alleging, among other things, employment discrimination on the basis of his religion.  Declaration of Andrew Prior dated Jan. 20, 2012 ("Prior Decl."), Ex. H. (Dkt. No. 83-1).  As part of the dual-filing system, this complaint was also filed with the Equal Employment Opportunity Commission ("EEOC").  Id.  On or about April 21, 2008, plaintiff filed a second complaint against Mangia 57, Inc., alleging that Mangia retaliated against him for filing his first complaint.  Affidavit of Roger Maldonado dated Feb. 22, 2010, Ex. 5 (Dkt. No. 13).  This complaint was also filed with the EEOC.  Id.  On May 13, 2009, the NYSDHR held a hearing on plaintiff's two complaints, and during the course of this hearing, Wiercinski agreed to withdraw them.  Wiercinski, 2010 WL 2681168, at *1.  At the hearing, the following exchanged occurred:

> The Court:
> [I]t is my understanding that at this time after consulting with Counsel, Mr. Wiercinski wishes to request permission from the Commissioner to withdraw his cases and will know that they will be dismissed with prejudice without any further proceedings.  It is my understanding that the parties have had discussion and that they wish to inform me that the matter has been settled between them and they understand that this is a request to dismiss with prejudice without any further proceedings.  Is that accurate, Gentleman?
>
> Mr. Maldonado:
> This is accurate, Your Honor.
>
> Mr. Colleluori [Plaintiff's counsel]:
> That's accurate.
>
> The Court:
> Mr. Wiercinski, that's accurate, correct?
>
> The Witness:
> Yes.

Declaration of Andrew Prior dated Mar. 16, 2012 Ex. 1 (Transcript of NYSDHR Proceedings), at 230-31.  After plaintiff filed a stipulation to that effect, the NYSDHR on May 14, 2009 dismissed both complaints with prejudice.  Prior Decl. Ex. H.  And, in light of the stipulation, the EEOC subsequently dismissed both complaints as well, informing plaintiff that "[i]n view of the agreement reached between you and Mangia LLC, the [EEOC] will take no further action on this charge."  Prior Decl. Ex. J.  On July 13, 2009, Wiercinski requested that the NYSDHR reopen his cases, but his request was denied on August 12, 2009.  Wiercinski, 2010 WL 2681168, at *1.  On August 14, 2011, counsel for plaintiff telephoned the EEOC to inquire about the possibility of obtaining a right to sue letter, and an EEOC representative stated that the agency would not issue such a letter and that it was not possible to obtain one under the circumstances of this case.  Warshawsky Decl. ¶ 2.

Plaintiff on October 14, 2009 initiated this action.  On December 13, 2011, Mangia filed a motion for summary judgment on plaintiff's remaining claims. Defendant's Memorandum of Law in Support of Motion for Summary Judgment dated Jan. 20, 2012 ("Def.'s Mem.") (Dkt. No. 83-5).  Plaintiff on March 2, 2012 filed his opposition.  Plaintiff's Memorandum of Law in Opposition dated Mar. 2, 2012 ("Pl.'s Opp'n") (Dkt. No. 84).  On March 16, 2012, Mangia filed its reply submission. Memorandum of Law in Further Support of Motion for Summary Judgment dated Mar. 16, 2012 ("Def.'s Reply") (Dkt. No. 87-1).  After being granted leave to do so, plaintiff on March 19, 2012 filed a sur-reply.  The Court on June 15, 2012 held oral argument on Mangia's motion.

Mangia contends summary judgment is warranted on plaintiff's Title VII claim because plaintiff has failed to exhaust his administrative remedies.  Further, even if

plaintiff had exhausted his administrative remedies, Mangia argues, plaintiff's Title VII and Section 1981 hostile work environment claims fail because plaintiff has established neither that the harassment he endured was sufficiently severe or pervasive nor that any basis exists for imputing the objectionable conduct to Mangia.  Mangia also seeks dismissal of plaintiff's claims for front pay, back pay, and future earnings on the claims, contending that plaintiff has failed to mitigate his damages.  The Court will address these contentions below.

## II. DISCUSSION

### A.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law.'"  Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (quoting Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008)).

The moving party bears the burden of establishing the absence of any genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  Id. at 322-23.  To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and

cannot "'rely on conclusory allegations or unsubstantiated speculation.'" Id. (quoting

Fed. Deposit Ins. Corp. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010)).

A court deciding a motion for summary judgment must "'construe the facts in the

light most favorable to the non-moving party and must resolve all ambiguities and draw

all reasonable inferences against the movant.'" Brod v. Omya, Inc., 653 F.3d 156, 164

(2d Cir. 2011) (quoting Williams v. R.H. Donnelley Corp., 368 F.3d 123, 126 (2d Cir.

2004)).  "'Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge.'" Kaytor v.

Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (quoting Reeves v. Sanderson

Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

"'In sum, summary judgment is proper only when, with all permissible inferences and

credibility questions resolved in favor of the party against whom judgment is sought,

'there can be but one reasonable conclusion as to the verdict,' i.e., 'it is quite clear what

the truth is.'" Redd v. N.Y. Div. of Parole, — F.3d —, 2012 WL 1560403, at *7 (2d Cir.

May 4, 2012) (quoting Kaytor, 609 F.3d at 546).

## B.  Exhaustion of Plaintiff's Title VII Claim

As a precondition to filing a Title VII claim in federal court, a plaintiff must first

exhaust his administrative remedies by timely filing a complaint with the EEOC,

obtaining a right to sue letter, and filing an action within 90 days of receipt of that letter.

See 42 U.S.C. § 2000e-5(e)-(f); Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) ("As a

precondition to filing a Title VII claim in federal court, a plaintiff must first pursue

available administrative remedies and file a timely complaint with the EEOC.").[1]

"Exhaustion is ordinarily 'an essential element' of a Title VII claim," <u>Williams v. N.Y. City Housing Auth.</u>, 458 F.3d 67, 70 (2d Cir. 2006) (quoting <u>Legnani v. Alitalia Linee Aeree Italiane, S.P.A.</u>, 274 F.3d 683, 686 (2d Cir. 2001)), and "one with which defendants are entitled to insist that plaintiffs comply," <u>Francis v. City of New York</u>, 235 F.3d 763, 768 (2d Cir. 2000).  This exhaustion requirement is "designed to give the administrative agency the opportunity to investigate, mediate, and take remedial action . . . ." <u>Shah v. N .Y. State Dep't of Civil Serv.</u>, 168 F.3d 610, 614 (2d Cir. 1999) (internal quotation marks and citation omitted).  However, because exhaustion is not a jurisdictional requirement, but instead simply a precondition to bringing a Title VII action, it can be waived by the parties or the court.  <u>Francis</u>, 235 F.3d at 769 (citation

---

[1] Exhaustion also requires that the defendant was named in the EEOC complaint. <u>Johnson v. Palma</u>, 931 F.2d 203, 209 (2d Cir. 1991).  There is an exception, however, when there is "a clear identity of interest between the unnamed defendant and the party named in the administrative charge." <u>Id.</u>  Mangia contends plaintiff failed to meet this requirement by naming Mangia LLC in his first NYSHRD complaint instead of Mangia 57.  Def.'s Mem. at 4.  Not so.  First, as a factual matter, although it is true that the caption of plaintiff's first NYSHRD complaint originally named only Mangia LLC, this fact is not dispositive as the body of the complaint mentions Mangia 57 throughout.  <u>Cf.</u> <u>Heicklen v. U.S. Dep't of Homeland Sec.</u>, No. 10 Civ. 2239 (RJH) (JLC), 2011 WL 3841543, at *10 n.12 (S.D.N.Y. Aug. 30, 2011) (noting that "the caption itself is normally not determinative of the identity of the parties or of the pleader's statement of claim" and finding that although plaintiff did not name two defendants in the caption of the complaint, he intended them to be parties in light of allegations naming them in the complaint's body).  Second, even if Mangia 57 were not mentioned in the complaint, the "identity of interest" exception would nevertheless apply.  Indeed, Mangia has already previously acknowledged that plaintiff "[e]rroneously named Mangia LLC" in his EEOC complaint and that the complaint "alleged unlawful discriminatory practices relating to his employment with . . . Mangia 57, Inc."  Maldonado Aff. dated Feb. 22, 2010 ¶ 6 & n.2 (Dkt. No. 13).

omitted) (defendants' exhaustion argument waived where, among other things, they did not raise it until after judgment had been entered).

Mangia argues that plaintiff's failure to obtain a right to sue letter bars his Title VII claim and that the Court has no basis on which to waive this failure to exhaust. Def.'s Mem. at 4-5; Def.'s Reply at 3-4.  Plaintiff acknowledges that he never received a right to sue letter from the EEOC but maintains that the EEOC letter dated November 19, 2009 informing him that in light of his withdrawal of the complaint against Mangia, it "will take no further action on this charge," constitutes the "functional equivalent of a right to sue letter" sufficient to satisfy Title VII's exhaustion requirement.  Pl.'s Opp'n at 9.  The Court disagrees.

Even a cursory review of the EEOC regulation that enumerates the required contents of "the notice of right to sue" required pursuant to Section 2000e–5(f)(1)[2]—the right to sue letter—makes clear the letter plaintiff received was not the functional equivalent of such a letter.  The regulation, 29 C.F.R. § 1601.28(e), provides as follows:

> (e) Content of notice of right to sue. The notice of right to sue shall include:
> (1) Authorization to the aggrieved person to bring a civil action under title VII, the ADA, or GINA pursuant to section 706(f)(1) of title VII, section 107 of the    ADA, or section 207 of GINA within 90 days from receipt of such authorization;
> (2) Advice concerning the institution of such civil action by the person claiming to be aggrieved, where appropriate;

---

[2] Section 2000e–5(f)(1) of Title VII provides in relevant part:

If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . .

42 U.S.C. § 2000e-5(f)(1).

(3) A copy of the charge;
(4) The Commission's decision, determination, or dismissal, as appropriate.[3]

The EEOC letter received by plaintiff plainly meets none of these requirements.  It simply states, in relevant part, "[i]n view of the agreement reached between you and [Mangia], the Equal Opportunity Employment Commission (EEOC) will take no further action on this charge."  Prior Decl. Ex. J.

Further, both of the cases relied upon by plaintiff in support of his contention are distinguishable.  In Perdue v. Roy Stone Transfer Corp., 690 F.2d 1091, 1094 (4th Cir. 1982), the Fourth Circuit concluded that a plaintiff could proceed on her Title VII claim even though she lacked a right to sue letter where the EEOC had negotiated a settlement between the plaintiff, and the defendant failed to abide by the agreement's terms.  The EEOC had refused to issue the right to sue letter in light of the parties' settlement.  Id. at 1092.  The Fourth Circuit allowed the plaintiff's suit to proceed not simply because the letter from the EEOC to the plaintiff said that "EEOC would take no further action her behalf" but more importantly because the defendant refused to abide by the settlement agreement.  See id. at 1094 n.7 ("Plaintiff's suit is timely if she sued within ninety days of acquiring knowledge or reason to know that the Company refused to abide by the settlement agreement and that EEOC would take no further action on her behalf." (emphasis added)).[3]  The Fourth Circuit stressed that to hold otherwise would mean that "a claimant forever loses his entitlement to a 'right to sue' notice, and hence the right to seek redress in federal court, when he enters into a settlement agreement, even if the employer who purportedly settled never had any intention of honoring the

_____

[3] Plaintiff selectively quotes from Perdue, omitting language regarding the defendant's breach of the settlement agreement.  Pl.'s Opp'n at 9 n.6.

11

agreement." Id. at 1093.  Here, by contrast, plaintiff does not contend Mangia breached

any settlement agreement between it and plaintiff; indeed, plaintiff stresses that in spite

of his representations during the NYSDHR proceeding on May 13, 2009, "there was no

'settlement'" between the parties at all.  Pl's Opp'n at 9 n.5.[4]  Additionally, unlike in

Equal Employment Opportunity Commission v. International Ass'n of Bridge, Structural

and Ornamental Ironworkers, Local 580, 139 F. Supp. 2d 512, 520 (S.D.N.Y. 2001),

where the court excused the plaintiff's failure to obtain a right to sue letter in light of the

EEOC's eighteen month delay in taking any action on behalf of the plaintiff, here, the

EEOC took action with respect to plaintiff's claims.  It informed him that based on his

decision to resolve his claims with Mangia, it would take no further action on his

charges.  Prior Decl. Ex. J.  Accordingly, because plaintiff failed to obtain a right to sue

letter, he has failed to exhaust his administrative remedies, and summary judgment on

plaintiff's Title VII is required unless the Court determines that the facts of this case

warrant equitable modification of Title VII's statutory requirements.[5]

　　　"'Courts in this circuit have recognized that the statutory prerequisites for

bringing a Title VII suit in federal court may be waived in cases where a plaintiff has in

some extraordinary way been prevented from asserting [his] rights, or when the EEOC

has incorrectly refused to issue a right-to-sue letter,'" Crisci-Balestra v. Civil Serv.

Emps. Ass'n, Inc., No. 07 Civ. 1684 (JFB) (ETB), 2008 WL 413812, at *3 (E.D.N.Y. Feb.

13, 2008) (quoting Ishikawa v. City of N.Y. Dep't of Cultural Affairs, No. 91 Civ. 7269

---

[4] Plaintiff instead simply agreed to withdraw his complaints and filed a
stipulation to that effect.  Id.

[5] Plaintiff does not contend that Mangia has in any way waived his
noncompliance with the exhaustion requirement.

(SWK), 1993 WL 362393, at *5 (S.D.N.Y. Sept. 14, 1993)), or "when affirmative misconduct by a defendant has lulled a plaintiff into inaction," Hladki v. Jeffrey's Consol., Ltd., 652 F. Supp. 388, 393 (E.D.N.Y. 1987) (Glasser, J.); see also Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist., 180 F.3d 468, 474 (2d Cir. 1999) (district court acted within its discretion by excusing absence of right to sue letter where plaintiff made diligent effort to obtain letter from EEOC and was denied it on erroneous basis).

No such circumstances are present here, and plaintiff has failed to set forth any reasons that would justify any equitable modification of the statutory requirement. Plaintiff does not contend that he was in any way lulled into inaction by Mangia; nor does he contend that he was prevented from asserting his rights in some extraordinary fashion or even that EEOC erroneously denied him a right to sue letter.  He instead argues that he made sufficient efforts to obtain the letter by requesting it roughly two years after he had chosen to discontinue his claims before the NYSDHR.  Pl.'s Opp'n at 10-11.  To be sure, authority exists for the proposition that a plaintiff's diligence in seeking to obtain a right to sue letter may be sufficient to cause a court to modify the statutory requirement, Negron v. City of New York, No. 10 Civ. 2757 (RRM) (LB), 2011 WL 4737068, at *6 (E.D.N.Y. Sept. 14, 2011) ("For the Court to waive a plaintiff's failure to obtain a 'right to sue' letter, 'the plaintiff must show or allege that he made an effort to procure the right to sue letter or that he raised the failure to issue a right to sue letter with the EEOC.'" (quoting Canty v. Wackenhut Corr. Corp., 255 F. Supp. 2d 113, 117 (E.D.N.Y. 2003)); Gonzalez v. City of New York, 354 F. Supp. 2d 327, 332 n.12 (S.D.N.Y. 2005) ("In light of plaintiffs' allegation that Rivera twice attempted to obtain a right-to-sue letter, the Court finds that his failure to produce one does not bar him from filing this lawsuit."), but the weight of authority and the view most consistent with the Second

13

Circuit's decision in Pietras is that some extraordinary event such as an error by the

EEOC in addition to mere diligence by a plaintiff is required to justify an equitable

modification of the statutory requirement.  See Pietras, 180 F.3d at 474 ("Given that

Pietras made a diligent effort to obtain a notice-of-right-to-sue letter from the EEOC

and was denied one on the erroneous basis that she was not an employee, we believe

that the district court acted well within its discretion by excusing the absence of such a

letter in this case."); see also Hladki, 652 F. Supp. at 393 (collecting cases).  The Court

thus has no basis upon which to waive Title VII's prerequisites and plaintiff's Title VII

claim is barred for failure to exhaust administrative remedies.  Mangia's motion for

summary judgment on plaintiff's Title VII claim is therefore GRANTED.  The Court next

turns to plaintiff's Section 1981 claim which, unlike the Title VII claim, is not subject to

any exhaustion requirement.  See, e.g., Woodcock v. Montefiore Med. Ctr. Univ. Hosp.

of Albert Einstein Coll. of Med., No. 98 Civ. 4420 (ILG), 2002 WL 403601, at *5 n.6

(E.D.N.Y. Jan. 28, 2002) (citing Patterson v. McLean Credit Union, 491 U.S. 164, 181,

109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989)).

## C.  Plaintiff's Section 1981 Claim

Plaintiff's Section 1981 hostile work environment claim is premised on his

"ancestry" and "ethnicity" as a Jew.  Compl. ¶ 92.[6]  Although Section 1981 does not apply

to discrimination on the basis of national origin, the term "race" is broadly defined "to

protect from discrimination identifiable classes of persons who are subjected to

---

[6] Section 1981 provides in relevant part that "[a]ll persons within the jurisdiction
of the United States shall have the same right in every State . . . to make and enforce
contracts, . . . and to the full and equal benefit of all laws and proceedings for the
security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. §
1981(a).

intentional discrimination solely because of their ancestry or ethnic characteristics." St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613, 107 S. Ct. 2022, 95 L. Ed. 2d 594 (1987). And there is no question that Jews count as a "race" under Section 1981. United States v. Nelson, 277 F.3d 164, 178 (2d Cir. 2002) (§ 1981 . . . extend[s] to protect the Jewish 'race.'" (citation omitted)); see also St. Francis Coll., 481 U.S. at 612 (analyzing legislative history of Section 1981 and noting that the 1866 Congress considered Jews to be a distinct race).

In analyzing claims under Section 1981, courts use the same standards as applied in Title VII cases. See, e.g., Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000).[7] A hostile work environment claim pursuant to Section 1981 thus "requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002) (citation and internal quotation marks omitted).

### 1. The Harassment of Plaintiff was Sufficiently Severe or Pervasive

The required showing with respect to the first prong "has objective and subjective elements:  the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Id. at 374 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).  The incidents of which a plaintiff complains "must be more than episodic; they must be sufficiently continuous

---

[7] Moreover, the same standards apply to both race-based and sex-based hostile work environment claims.  Id.

15

and concerted in order to be deemed pervasive." Carrero v. N.Y. City Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989) (citation omitted); accord Fincher, 604 F.3d at 724. However, a single act can create a hostile work environment if it in fact works a "transformation of the plaintiff's workplace." Alfano, 294 F.3d at 374 (citations omitted). In deciding whether this "threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." Id. (citation omitted). Moreover, a plaintiff must establish that the actions were taken because of his race. See id. ("[I]t is 'axiomatic' that in order to establish a [race]-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of" his race (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001))).

Mangia argues the harassment of plaintiff was not sufficiently severe or pervasive because (1) the environment was not objectively hostile and (2) plaintiff did not subjectively perceive the environment to be abusive. Def.'s Mem. at 6-10. The Court finds both of these contentions unpersuasive.

With respect to the latter contention, Mangia maintains that "Plaintiff cannot claim that he subjectively perceived the environment at Mangia 57 to be abusive since he desires to return to work at Mangia 57." Def.'s Mem. at 7; see also Def.'s Reply at 5-6. Plaintiff does not dispute that he has been waiting for Mangia to hire him back, Pl.'s 56.1 Statement ¶ 44, but this fact is ultimately irrelevant. As plaintiff notes, "whether or not [he] would like to work for [Mangia] in the future, now that the harassment has stopped, says nothing about how he perceived the work environment while the

harassment was ongoing." Pl.'s Opp'n at 14.[8]  Viewed in the light most favorable to plaintiff, the evidence before the Court is at the very least sufficient to create an issue of material fact as to whether plaintiff perceived the work environment at Mangia to be hostile and abusive.  Plaintiff described the work environment at Mangia as "hell," Warshawsky Decl. Ex. 2 (Wiercinski Dep.), at 282, and frequently complained to Cymanow after suffering abuse at the hands of his coworkers, see, e.g., id., Ex. 2 (Wiercinski Dep.), at 273 ("A.  I complained to Margaret that he's been mistreating me, and she took no action.  Q.  When did you complain to her?  A.  On numerous occasions.").  Moreover, plaintiff testified that this treatment caused him to feel intimidated.  For example, plaintiff described his reaction to the verbal abuse he suffered at the hands of Zbozien on his first day of work at Mangia as follows:  "I was so intimidated, I didn't know how to react to it.  Every other man would blow his head off for that, but I was kind of intimidated."  Id. Ex. 2 (Wiercinski Dep.), at 268.[9]  Based on

_____

[8] Indeed, plaintiff has acknowledged that the harassment he suffered at Mangia stopped on or about February 13, 2007, after plaintiff's counsel sent a letter to counsel for Mangia.  Compl. ¶ 55.

[9] Both of the cases relied upon by Mangia in support of its contention that plaintiff did not subjectively perceive the environment at Mangia to be abusive are inapposite.  Before the court in Witt was a "sworn statement [from the plaintiff] indicating that she did not subjectively believe that defendant['s] . . . behavior was motivated by an unlawful intent to discriminate."  Witt v. Moffe, No. 03 Civ. 397A, 2008 WL 324255, at *1 (W.D.N.Y. Feb. 6, 2008) (granting defendant's motion for summary judgment on hostile work environment claim).  Meanwhile, in Turner, there was no evidence adduced at trial that the plaintiff perceived her work environment to be abusive.  Turner v. Int'l Union, Auto. Aerospace & Agr. Implement Workers of Am., 149 F.3d 1184, at *3 (6th Cir. 1998) (table) (affirming district court's grant of defendant's Fed. R. Civ. P. 50(a) motion on plaintiff's sexual harassment claim).

these facts, a reasonable jury could conclude that plaintiff perceived his treatment to be abusive.

As for Mangia's former contention—that the environment was not objectively hostile—this argument also fails; a reasonable jury could find that the conduct and comments of plaintiff's coworkers and supervisors were severe and pervasive enough to constitute a hostile work environment.  Viewed in the light most favorable to plaintiff, the evidence shows that from 1999 through February 2007, plaintiff suffered repeated offensive conduct and harassment due to his race.[10]  Zbozien frequently referred to plaintiff, among other things, as "stupid Jew," "dirty Jew," "fucking Jew," told him to go away because it "smells of Jew," and would say, "Fuck off, you stupid Jew." Warshawsky Decl. Ex. 3 (Krajewski Dep.), at 37-39; id. Ex. 5 (Ubowski Dep.), at 48, 67; id. Ex. 2 (Wiercinski Dep.), at 271.  On two occasions, Zbozien also made reference to Zyklon B in interactions with plaintiff.  Id. Ex. 2 (Wiercinski Dep.), at 278-79.  He also frequently refused to distribute to plaintiff his share of tips at the end of each shift— forcing one of his colleagues to do so—but on approximately 10 of the occasions in which he did interact with plaintiff, paid him part of his tip in pennies by tossing the pennies at him, the surrounding tables, and the floor.  Id. Ex. 3 (Krajewski Dep.), at 31, 36; id. Ex. 2 (Wiercinski Dep.), at 272, 274-75.

The evidence also establishes that other employees subjected plaintiff to both verbal and physical abuse—Bazgier, for example, kicked plaintiff in the groin and called him a "fucking Jewish pederast faggot," id. Ex. 2 (Wiercinski Dep.), at 289, while Sarosiek pushed plaintiff into a wall, telling him to "get the fuck out of here you fucking

---

[10] Mangia euphemistically refers to a majority of the alleged derogatory comments as "mere offensive utterances."  Def.'s Mem. at 9.

Jew," id. Ex. 2 (Wiercinski Dep.), at 285.  Even Cymanow made anti-Semitic comments

to plaintiff, stating to him on many occasions that she blamed the Jews for killing Christ.

Id. Ex. 2 (Wiercinski Dep.), at 253-54.  Taken as a whole, this evidence decidedly creates

a genuine issue of material fact as to whether a reasonable employee would have found

the conditions of his employment "sufficiently continuous and concerted in order to be

deemed pervasive," thereby "alter[ing] the conditions of the [plaintiff's] employment

and creat[ing] an abusive working environment."  Perry, 115 F.3d at 149 (citations and

internal quotation marks omitted).[11]

### 2.  There is a Basis for Imputing the Misconduct to Mangia

The second prong requires grounds for imputing the misconduct to the employer.

Plaintiff has described conduct by both his coworkers—Bazgier and Sarosiek—and his

supervisors[12]—Cymanow and Zbozien.  The actionable conduct of plaintiff's supervisors

is automatically imputed to Mangia, unless it can establish by a preponderance of

evidence that it "exercised reasonable care to prevent and correct promptly any

[discriminatory] harassing behavior," and (2) "the plaintiff employee unreasonably

failed to take advantage of any preventive or corrective opportunities provided by the

---

[11] Focusing on the amount of tips plaintiff received and his duties and
responsibilities versus that of other Mangia employees, Mangia also maintains that
plaintiff's "alleged treatment was not based on his membership in a protected class."
Def.'s Mem. at 12.  This argument is beside the point.  As plaintiff notes, he does not
contend that Mangia discriminated against him in the assignment of work or in the
payment of wages but instead that he was subject to a hostile work environment at
Mangia because of his race.

[12] An employee is a supervisor "if he has the actual authority to direct another
employee's day to day work activities in a manner that may increase the employee's
workload or assign additional or undesirable tasks."  Mack v. Otis Elevator Co., 326 F.3d
116, 126 (2d Cir. 2003).  The parties do not dispute that Cymanow and Zbozien were
plaintiff's supervisors.

employer or to avoid harm otherwise." <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).  The actions of plaintiff's coworkers will be imputed to Mangia if it "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." <u>Murray v. N.Y. Univ. Coll. Of Dentistry</u>, 57 F.3d 243, 249 (2d Cir. 1995) (internal quotations and citations omitted). "If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." <u>Gallagher v. Delaney</u>, 139 F.3d 338, 348 (2d Cir. 1998), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Ellerth</u>, 524 U.S. 742; <u>see also</u> <u>Whidbee</u>, 223 F.3d at 72 ("[W]e have held that if harassment continues after complaints are made, reasonable jurors may disagree about whether an employer's response was adequate." (citations omitted)).

Mangia contends there is no basis to impute the alleged conduct to it "because as a matter of law, [Mangia] promptly addressed issues when Plaintiff reported them and Plaintiff consistently failed to complain of alleged conduct."  Def.'s Mem. at 15.  Mangia is mistaken.

Viewing the evidence in the light most favorable to plaintiff, the Court concludes that there are numerous factual issues about the promptness and adequacy of Mangia's remedial response to plaintiff's complaints such that Mangia's motion for summary judgment must be denied.  For example, plaintiff complained to Cymanow about the treatment he received at the hands of Zbozien during the tip distribution process "[o]n numerous occasions" only to be met with the response that she was too busy to deal with the complaints.  Warshawsky Decl. Ex. 2 (Wiercinski Dep.), at 273.  Similarly, plaintiff testified that Cymanow took no action when he complained to her after Zbozien

20

sprinkled salt on his food and made the Zyklon B comment and after Bazgier kicked plaintiff in the groin and called him "a fucking pederast Jewish faggot." Id. Ex. 2 (Wiercinski Dep.), at 280, 289-90.  While it is true, as Mangia contends, that in response to a complaint from plaintiff regarding Zbozien's treatment of him, Cymanow took remedial action by transferring Zbozien to another Mangia location, there is a fact question about the adequacy of this response as two or three weeks after being transferred, Zbozien returned to Mangia 57—a situation plaintiff described as "hell all over again." Id. Ex. 2 (Wiercinski Dep.), at 282.[13]  Accordingly, because there are disputed issues of fact as to whether Mangia's actions in response to plaintiff's complaints were effectively remedial and prompt, Mangia's motion for summary judgment is denied.

### 3.  The Parties Agree that Plaintiff is not Entitled to Front Pay, Back Pay, and Future Earnings

Mangia also contends that because plaintiff failed to mitigate his damages, his claims for front pay, back pay and future earnings should be dismissed.  Def.'s Mem. at 16-17.  Plaintiff responds that his failure to mitigate his damages is irrelevant because he

---

[13] Nowhere does plaintiff testify that Zbozien's harassment of him stopped after Zbozien returned to Mangia 57.  The testimony Mangia relies on in support of this contention is as follows:

> Q.  Were there any other incidents between you and Mr. Zbozien?

> A.  Nothing worth mentioning here.  During the counting procedures, quote "I'm not going to deal with this fucking Jew," and Bazgier coming instead of him and throwing pennies at me.

> Q.  But anything other than what you already testified to?

> A.  No.  I don't recall at this time.

Warshawsky Decl. Ex. 2 (Wiercinski Dep.), at 284.

"is not pursuing such damages in this case" and, in any event, "[f]ront pay, back pay, and future earnings are not components of recoverable damages for hostile work environment (in the absence of constructive discharge)."  Pl.'s Opp'n at 23 (citing Locicero v. N.Y. City Transit Auth., No. 06 Civ. 4793 (FB) (JO), 2010 WL 5135875, at *5 (E.D.N.Y. Dec. 10, 2010)).  In light of the parties' agreement that plaintiff is not entitled to such damages on his hostile work environment claim, to the extent plaintiff's complaint seeks damages for front pay, back pay, and future earnings with respect to the claim, the claim for such damages is dismissed.

### III.   CONCLUSION

For all of the foregoing reasons, Mangia's motion for summary judgment is GRANTED as to plaintiff's Title VII claim and DENIED as to plaintiff's Section 1981 claim.  To the extent the complaint seeks damages for front pay, back pay, and future earnings with respect to plaintiff's Section 1981 claim, the claim for such damages is dismissed.

SO ORDERED.

Dated:        Brooklyn, New York
              June 18, 2012


_____/s/_____
I. Leo Glasser
Senior United States District Judge

22